18-20022 Megan Winfrey v. Johnson Megan Winfrey spent over six years incarcerated for a crime she did not commit. She asserts both Fourth and Fourteenth Amendment claims against defendant Leonard Johnson. Under the controlling precedent that was set by a panel of this court last year in her brother Richard Winfrey Jr.'s case, Megan's Fourth Amendment claim against Johnson has to be remanded for trial. The court in Richie's case held that there is sufficient evidence that Johnson recklessly or knowingly included false statements and material omissions in his arrest warrant affidavit for Megan, and there is no distinguishing feature of Megan Winfrey's Fourth Amendment claim that would call the result here to be different. But there were separate probable cause hearings, right? There was a – the warrants were obtained at the same time, and the grand jury was presented with evidence on the same date. I believe it was March 22, 2007, so it was all done – I mean, I don't – Not the magistrate. Yes, so both. As to both, the presentation of the arrest warrant affidavit to the magistrate was done on February 2, 2007, for all three Winfrey's, the father, junior, and Megan. The grand jury proceeding occurred on March 22, 2007, for all three of them. And that's in the – that's documented in the reports of the Texas Rangers Huff and Duff at ROA 2447. But I'm reading here from the – our court's opinion from last year that you referenced in your opening, and it says at one hearing the judge determined that there was probable cause to arrest Megan, but nothing about junior. You need to speak up a bit. Oh, sorry. Did you hear me? Right, yes. Sorry. I did. And that was – that was a transfer hearing. So Megan was a juvenile at the time, and so there was a hearing that the court – that the state court had on March 15 of 2007 where it determined that there was probable cause to transfer her to adult court. There was an order to that effect, but there was nothing in that order that indicated that any of the taint from the falsehoods had been removed. And so, you know, the record evidence that we have is that there was no difference between the evidence that Johnson presented to the Maastricht in February of 2007 and the evidence that was subsequently presented to the other – In fact, since the affidavit for junior got lost, the court in that case was relying on the affidavit for Megan and her dad, right? Right. Well, now let me – but let me pursue this a little bit also because, you know, you can't use the – actually the scent trail evidence, the mistaken scent trail, isn't relevant to Megan as it was to junior's case, correct? Right. I mean, the – I mean, you do have to analyze them in terms of the particular evidence for each defendant, even though the ruling of the other case is binding for us, right? Yes. And so the scent trail – well, there were two scent things. I understand. I understand what a scent – there's a scent trail and then there was the scent ID procedure. And I'm talking about the dog that went from Burr's house to Megan's house. Right. So what actually happened was that Pikett used the scent for Christopher Hammond. He put in his report that he had used the scent for – well, he initially – Well, I mean, if anything, that's even – that's more incriminating to Megan, isn't it? Because she was either married to Hammond at the time or he was her boyfriend. It doesn't shed any light on whether Megan had anything to do with the Burr. I don't know, but the fact that it's the boyfriend is interesting, this thing. I mean, it depends on what the facts might show about scent transfer. I mean, we had an appeal last year concerning Pikett as well and his results. Well, the deal about – is it Pikett or Pickett? I think it's Pikett. Pikett? Okay. Well, I mean, nobody impugned the procedure where he did the scent trail from the house, did they? The scent lineup is what is challenged and somewhat the Texas Supreme Court ruled about that, right? But nobody challenged the scent trail. There was a challenge to the scent trail. Other than for the name, though. Well, no. I mean, the scent trail and the methods by which he conducted the scent trail were called into question by experts that we had in the case. And so, I mean, the claim against Pikett challenged both his fabrication of the scent lineup as well as the scent trail. And I would submit that the fact that Christopher Hammond was Megan's boyfriend does not give rise to probable cause to believe that Megan was involved. Well, okay, let me be a little more precise, and I don't want to waste your time. What seems to me to differentiate this case from the other is that you did have the two pieces of information from the teachers at school about Megan and Burr. The one where she puts her arm in his arm and says, how old was Mr. Burr, by the way? I'm not sure, but he was at least in his 30s, probably. Okay, she puts her arm in and says, when are you going to spend some money on me? And then she makes a comment about beating the shit out of him after she appears to have been in an argument. So you had that in the man's affidavit, which you didn't have. And certainly you have inconsistencies in Campbell's affidavit with regard to the two interviews. Fine. But is the defendant not accurate in saying that after she was arrested, the prosecutor called in the Texas Rangers, and by the time it got to the grand jury, there was more incriminating evidence about Megan? That's inaccurate. The statement from Jason King, they referred to a statement from Jason King, who was another person that had dated Megan at some point in time. He didn't come forward until 2008. And so there was no evidence. And what's in the record is it— Okay, he came forward in 2008. After the grand jury indictment. And so between the time that Johnson submitted the arrest warrant affidavit containing his falsehoods and material omissions to the magistrate in February of 2007, between that time and the time of both the transfer hearing, where the court found that she could be tried as an adult, and the grand jury hearing, both of which occurred in March of 2007, there was no additional evidence that was produced. And the record for that is in Huff and Duff's reports, which I provided the record site for before. Huff and Duff were the Texas—they documented every step in the investigation. When did they come in? Well, they were involved since the beginning. Okay. But they—I'm just saying that what the record shows in terms of what evidence came forward at what point in time, it's in Huff and Duff's reports. And what their reports showed was that there was no additional evidence that came forward. And what I would also add is that to this day, and let me be more precise, at the time of summary judgment in the court below, both Lacey Rogers, the sheriff, and Leonard Johnson swore in affidavits that they submitted with summary judgment that they did not—they were not aware of the drop trail error until this lawsuit was filed. And so what that means is they're saying, we didn't know that there was an error, and so it's inconceivable—you could not infer from that that they then brought forward that evidence at the earlier time at either the transfer hearing or the grand jury. So if they're taking the position that, you know, they did not know of what was in Pikett's report— No, I'm more interested in this. And I'm sorry, I had forgotten about the 2008, the gap. So she's arrested in February, indicted in January of 2007, and what? Is she sitting in jail for the entire period until 2008? Well, yes. She sat in jail from the time she was arrested. I think the arrests weren't issued in February of 2007. The grand jury was in March of 2007, and then she was arrested. From that point on, she was detained until 2013 when the Texas Court of Criminal Appeals reversed her case. And the trial was in late 2008? Yes, October of 2008. Okay. What I'm interested in is this. The only defendant here is Mr. Johnson. And according to their brief, Mr. Johnson had no contact with this case after she was arrested, after he filed the false affidavit, allegedly false affidavit, and she was arrested. But then when Jason King comes forward, or at some point in 2008, maybe it was Campbell or whatever provoked this, they reopened the investigation. Even the Texas Rangers started redoing the investigation. You had the Jason King statements. You had Campbell's statements. And by the time she goes to trial, Johnson is totally out of the picture. Is that correct or not? So it is true that Johnson did not testify at trial. But what he did was fabricate Campbell's statement. And the difference between many of the results— Well, now that's a heavy charge, and Mr. Campbell, according to the Texas Supreme Court, indicated discomfort with the fact that he was having to testify against Megan. But the way the majority in the Texas Supreme Court puts it, that's not because his statements were fabricated. It is because he thought Winfrey Sr. was the culprit and not Megan. What Campbell testified was that Johnson tried to stage something against the Winfrey family. When did he testify that? He testified to that at trial, at Megan's trial. Well, why didn't the Texas Supreme Court seem to think that was important? What is important is whether a reasonable fact finder, a jury in this case, could find from Campbell's own statements that Johnson tried to stage his— Well, but is it staged testimony if he then goes on and testifies to what he wants to testify to? How can it be fabricated if you tell the jury they tried to fabricate it, but now I'm telling you what I really think? What he testified to at trial was a very key fact. He claimed at Megan's trial that it was the kids, that Sr. told him while they were in the tank together, that the kids let him into the house, and that is both the key inconsistency between Campbell's two statements to Johnson in 2006 and the key thing that came out at Megan's trial. And I would submit that the reason why this is so important is because if you look at the evidence that was presented at Megan's trial versus Richie's trial— Remember, Richie was acquitted. He was acquitted within 26 minutes. And the reason was Campbell did not testify at Richie's trial. The only difference in the evidence that was presented— And I assume they proved the scent trail was inaccurate at that point in Richie's trial. Well, his—I mean, he had an expert who testified about— He didn't have a former boyfriend saying that she had done things to herself to prevent evidence from being corrected and obviously tried to concoct— I mean, they didn't have anything with Richie. They had different evidence. Jason—the only difference in the evidence was David King. That's not the only difference. It is the only difference. Let's not argue about Richie. Jason King testified at both of their trials. Pikett testified at both of their trials. And so the only difference, and the reason why Campbell's— is because he testified at Megan's trial, and therefore Megan was convicted. But he also said—he also testified that Johnson was trying to make him fabricate, right? I mean, again, how is it fabrication if you tell the jury outright— You know, the way these things come up to us normally is five years after the conviction, the witness who was on the stand testifying falsely says, Oh, by the way, the policeman threatened me, and therefore I testified falsely. But this man gets on the stand. Well, anyway, my point is this. My point is this. You have, as best I understand them, you have a claim for Fourth Amendment detention, which, according to the manual case, goes up until the time of trial. Yes. And then you claim to have a Fourteenth Amendment violation due process based on fabricated evidence. What I'm suggesting is that if the latter claim is weak, the stronger claim covers only Megan's detention up through trial. Do you agree with that or not? I mean, that's what this Court has held in Castellano, that the Fourth Amendment protects— No, it's in manual. It's not just Castellano. Well, yes, yes. But in manual, in footnote eight of manual, the Court did say that the Fourth Amendment is what covers the pretrial detention up until the time of the conviction. But her Fourteenth Amendment claim is based not only in the fabrication of David Campbell's testimony, but in the inadequate state law remedies, which the defendant does not respond to at all. Well, and I guess my qualm about that is, as far as immunity goes, when you read those Texas Supreme Court opinions, it is very plain that nobody doubts that Megan had motive, opportunity, and propinquity to the victim, although the idea of saddling a 16-year-old with this horrible murder is pretty appalling. But she had all those things, and nobody says there was no probable cause. And the grovelment of a Frank's claim is whether there was probable cause. Isn't that correct? Yes, but there was no probable cause. The statements of the teachers did not cause Johnson or Rogers to seek an arrest warrant affidavit. They had those statements from the teachers in August of 2004, the month that Murray Burr was killed. They didn't do anything with it. And Rogers testified at his deposition that he thought it was irrelevant. And the Court in the original Richard Winfrey appeal that this panel, not this panel, but a different panel heard held that the statements from the teachers was questionable propensity evidence. Those statements from the teachers alone did not cause anybody to do anything. Nothing happened until Campbell came forward. I'm not, I'm not, okay. We understand that. Thank you. Mr. Giles. May it please the Court. My name is Norman Giles. I represent Leonard Johnson. Let me just ask a question. Exactly which officers or investigators remain potentially on the hook in these cases? Does Pikett Johnson, I mean, qualified immunity was granted to several, correct? Yes, yes, Your Honor. Our Deputy Johnson is the only defendant remaining in the suit. And Pikett's settled? Pikett's settled. Okay. What our discussions today reveal is that Ms. Winfrey's claims are rest upon a very unsettled legal foundation. And? What's unsettled about the proposition that you can't lie and misrepresent and omit in an affidavit seeking and arrest warrant? There's nothing unsettled about that general proposition. Certainly Franks v. Delaware settled that issue. I don't argue that. The issue is whether a due process claim can be brought in the manner in which they've done that. But instead of getting into that discussion, I believe the clearer thing is Deputy Johnson's immunity. How do you distinguish the Ritchie case, the 882-Fed 3rd? The way that the court brought up earlier, clearly there was a finding of probable cause in the Ritchie case. Right, but they still remanded. So the finding of probable cause isn't by itself enough because the problem is if you lie, then you can get probable cause. I could go fill out an affidavit and say you murdered somebody yesterday, and I could get an arrest warrant based on that, and it would be a lie. So there would be probable cause based on my affidavit, but it would be a lie. I wouldn't do that, by the way. That just is a hypo. I believe that Franks v. Delaware answered that question. The lie has to be something that's necessary for finding a probable cause. And that's where this case falters is the alleged lie. They just think the Ritchie case is wrong. Well, this court will decide whether it's wrong or not. I say it's inconsistent with the findings of the Supreme Court on the way to analyze these types of claims because the Ritchie case basically only went to a probable cause determination. Once the court concluded that there was no probable cause, there was no analysis of whether there was arguable probable cause, whether an officer could reasonably believe that the information that was submitted in the warrant application was lawful. But aren't we bound by that case? Well, you're bound by the aspects of that case that were decided in that case. But you have different facts in this case. As Judge Jones discussed earlier regarding the probable cause and the connection with the scent trail, but you have another difference in this that the junior case did not handle, and the junior case did not handle any aspect of immunity. It basically got to the probable cause question. It reached a different decision on probable cause than did the district court, and that did every officer, whoever was involved in the investigation, in a different finding than the courts of appeal did, essentially. Does the previous decision conclude that essentially that in this Franks situation, when there's enough evidence to suggest that, and I'm not saying whether I agree or disagree with it, but it's relevant, very relevant here, when there's enough evidence to suggest that the police officer misrepresented material facts or omitted very significant material facts, that that sets up the basis for no immunity. I mean, it's just like an excessive force case if the officer, you know, just beat the heck out of the guy's face when he was trying to arrest him. You would conclude that there's no qualified immunity for beating somebody's face up. Of course, Franks v. Delaware was a criminal case with criminal laws, and then the cases since that have interpreted that and applied it in the civil context, but there's no case, no identifiable case that says just because there's a Franks violation, immunity does not apply. Franks actually imposes a challenge into the question of probable cause, and in this case, once we've gotten to that point, I believe the cases that deal with probable cause are the cases that we should look toward and the cases that we have to apply when deciding how to utilize immunity because we can, regardless of the reason why the warrant application failed to establish probable cause, even under Franks, one of the elements is probable cause. So once we get to that question, then the issue is whether Deputy Johnson could reasonably have believed probable cause. Well, I don't disagree with that in theory, but did the Winfrey case sort of ignore that step in reaching the conclusion that it had to go to trial or did it still leave an opening for that defense? The Winfrey Junior Court completely ignored the step. It just got to the probable cause standard. So what's the status of that now? We'll file a petition for writ of certiorari in the Supreme Court on that case by the end of January. Oh, really? Yes, Your Honor. Oh, that's a long delay. Well, the brief was due on December 27th, and I asked for a continuance to get past the Christmas. But you do agree that the Winfrey court, the 2018 Winfrey court, resolved the qualified immunity question against your client? I don't agree to that. I don't believe the Winfrey court even discussed the qualified immunity question. It mentioned the qualified immunity question. It has law about the qualified immunity question, but it performed no analysis of the relevant immunity test. It essentially said that since there was no probable cause, then the officers had no immunity. I'm not agreeing or disagreeing with Winfrey, but it does have several pages of discussion about the colloquially established law under Franks. It specifically holds that it's denying qualified immunity at the summary judgment stage, and it vacates and remands for trial. So whether it's right or wrong, it does specifically address qualified immunity as applied to this Fourth Amendment claim on what look like the same facts that we've been discussing this morning, at least as to the Fourth Amendment claim that would go up to the time of trial. And what I'm asking is how do you get around that for purposes of this case? In addition to the factual distinctions we've discussed before, again, I do not believe that the junior case actually ruled on whether a reasonable officer could have believed it was appropriate to submit the warrant application that was submitted. You're criticizing the decision, which we're not able to do as far as a panel. I mean we can criticize it, but we still have to follow it under the rule of orderliness. So I think what we're getting at is at least pretrial, which is the Fourth Amendment claim for Megan, what are the differences that would distinguish the case, not criticize the case? Well, I think that the Supreme Court, and actually I filed a letter brief yesterday where the Supreme Court decided the city of Escondido versus Emmons. And again, in that case, although that was a forced case, it made it very clear what the required analysis is to evaluate immunity. I think you're absolutely right about that for warrantless arrest. There's no question about it. I think I have in my chambers the research regarding the sufficiency of affidavits came out differently, and I'm not quite sure why, and I'm not quite sure why in theory. But let me propose another theory, and that is how can you hold Mr. Johnson liable here where not only where the investigation was reopened, Ms. Wang didn't answer the question that you said Deputy Johnson was not involved after the affidavit. The Texas Rangers conducted the rest of the investigation. Deputy Johnson didn't testify at trial. And then you have two judges on the court, you have members of the jury panel, prosecutors, two judges on the Court of Appeals, and seven judges on the Texas Court of Criminal Appeals  I mean, how can you hold the officer liable under those circumstances? And I couldn't think of an analogous case offhand. There is no analogous case. That's the issue here. There's no way that Deputy Johnson could have known when he submitted the warrant application that his conduct violated clearly established law or that arguable probable cause was lacking. Well, he could have known if he lied. I mean, that's the problem. So if he lied, then he knows that's not right. Well, I mean, even the Winfrey panel doesn't call it lying. They were saying there were misstatements about the two interviews of Campbell and the sufficiency of the dog scent and so on. And I believe that it's important to talk about what the lie is. The problem, I believe, in this case is everything is couched generally. And, of course, when we say, of course, we don't want the police to lie. But the question here is about whether Deputy Johnson failed to notice that in one of the reports that another officer filed that he wrote that they made the error in the scent lineup. Deputy Johnson wasn't involved in the scent lineup. The evidence shows that he didn't participate in the thing that's being challenged. So he had no personal knowledge of that. And what he's being charged of doing is not reading a report that showed that. And I don't see that as being the kind of lie. It applies to Ritchie, too. I mean, I guess I'm wondering, if we're just talking about the Fourth Amendment, I understand my colleagues' references to what happened later at the trial, but if we're just talking about the Fourth Amendment, the pretrial scenario, what is different about Megan and Ritchie that would allow us to distinguish, not criticize, and not find lacking our prior precedent in Ritchie? Well, I don't believe that Ritchie dealt with the issues that I'm raising in this case. And, again, the evidence is different. The express finding of probable cause, the Ritchie panel noted in its own opinion that Megan's was different because she actually had a probable cause finding and Ritchie Jr. didn't. And so that's something that the junior panel thought was significant enough to even include in its opinion. Where is that approximately? Well, you can file — I mean, it's up here. You can file it after argument, if you like. I actually had it noted, but I don't see it at this moment. Counsel, I'll give you a citation to go in the other direction. On page 494 of the Winfrey II panel opinion, it says, We conclude Jr. alleges a clearly established constitutional violation. And then they go through the false statements and omissions in the Johnson affidavit. And to Judge Haynes' question, I'm just trying — I want to understand how we — how your side would get around this holding, that there is a clearly established constitutional violation as to the Franks' claim or what's called the Fourth Amendment claim in light of that precedent. Again, not agreeing whether it's right or wrong, just trying to figure out. The panel essentially said that in light of Franks, that if there was no probable cause, then there was no — then that would be sufficient to deny immunity. The panel did not discuss the impact of District of Columbia v. Westby. There's nothing in the panel's opinion that talks about what the Supreme Court did in District of Columbia v. Westby. And Westby analyzed probable cause first, and then after that it analyzed the necessary procedure that the court must go under. Other than that, then the issue is the express finding of probable cause that Megan has that's different, and the difference in the sent evidence. The sent evidence is different in this case because the implications are different. In the Winfrey, Jr. opinion, it also talked about how it was implicated — or Jr. would not necessarily have any direct contact with Mr. Burr absent the sent lineup. Megan Winfrey doesn't have that same situation when she's challenged in the affidavit, and I think this goes into the actual parts of the affidavit that must be analyzed. There is probable cause in the Ritchie case, right, because he is indicted. They're both indicted. So you said earlier that there was no probable cause finding as to Ritchie, and I'm trying to make sure I understand what you mean by that. Yeah, sure. The Court of Appeals' opinion in Ritchie, Jr. indicated there was no express finding of probable cause, and what it did point out that there was an express finding of probable cause as to Megan. Now, I believe that the whole criminal procedure that we discussed earlier clearly demonstrates that there had to be probable cause for that prosecution to continue, but there was no express finding by a judge. The issue is that — what makes this case different from the other kinds of cases that Ms. Winfrey seems to rely on is what actually happened factually here. This is a case where the investigation goes on for two and a half years, and Deputy Johnson didn't rush to judgment and go and request an arrest warrant. Deputy Johnson actually was summoned by the district attorney after the district attorney analyzed the evidence and determined it was appropriate to request an arrest warrant. Are you talking about March of 2007? Is that what you're saying? It was actually February 2nd of 2007. Well, that's the arrest warrant. I mean, wasn't that fact alluded to in the Ritchie case? No, it wasn't. There was absolutely no mention of the involvement of the district attorney. There was no mention of the findings of the agreement of the Rangers with probable cause. None of the things that had to do with what happened prior to that were— Well, when did Ritchie—so did the Rangers— I mean, was it briefed to the court there that the Rangers had reopened? I mean, no other evidence came out about Ritchie, though, right, during the Ranger— sort of the reexamination of the case? That would be correct. Okay. And is it all—but more evidence came out about Megan because of her boyfriend. That's correct. Okay. That evidence was collected, though, by the Rangers and by the district attorney's investigators because— Right. Johnson was out of it. Johnson was out of it. And is it—just for my own information, is it accurate or not accurate that the trial testimony about— well, really, you have Winfrey Sr., who was also convicted, and then you have Winfrey Jr., and then you have Megan. So if you put them together, there was less evidence on Winfrey Jr. than there was on Megan. At trial, that would be correct. Considerably less. Right, because the prosecutors changed the strategy somewhat, and also there was less evidence that implicated Ritchie Jr. The other thing, though, is that although the independent intermediary doctrine applies here, what's more important about that idea is that a reasonable officer could have believed that probable cause existed in light of all of the things that we've been discussing earlier today. Now, it's not that—the inquiry shouldn't end— The problem to me is it's a little bit circular because if, for example, a witness lied to him and he wrote that stuff down, you know, having good cause to believe it, but it turns out the witness was lying, that would be a situation where the officer innocently makes misstatements and innocently believes that there is probable cause. But given what we said in the Ritchie case, I mean, we're saying he made these misstatements knowingly. Well, then that takes away from I thought there was probable cause, because then why am I making—you know, you don't want to call it a lie, call it a misstatement. Why am I messing up the affidavit when I know the truth? That's the question. Well, the question, I think, is the question of what the lie is. Again, if we say lie in the big, broad sense, that sounds like a big evil, but we're talking here about what he didn't do. What he didn't do was write that the sent didn't go to— The other thing we're talking about is that Mr. Campbell did not agree with the way that he was interrogated by Deputy Johnson, but Deputy Johnson cured that by letting the sheriff talk to Mr. Campbell, and then the Rangers later talked to Mr. Campbell. Videotaped. Videotaped. And so those are the kind of things we're talking about. We're not talking about the kind of things that happen in Castellano where somebody goes and fabricates videotape recordings or the kind of things that come up in other kinds of cases like this where they actually do something to the evidence. These are basically you-got-it-wrong kinds of things, not something that basically really is important for determining whether an officer could reasonably have believed the probable cause existed. That was — I mean, I don't mean to keep harping on, but that was true in the Ritchie case, and they list it and they say that's enough, and they overcome — But they don't call it lies. They call it errors and omissions. They call them false statements. All right. To me that's a lie, but false statement. Thank you. All right, sir. Thank you. Ms. Wayne, what's the status of Winfrey Sr.'s trial? Winfrey Sr.? Yeah. Was that settled? We didn't — we don't represent — do you mean his civil case? The father, yeah. Right. We didn't file a civil case for him. We only represent Megan and Junior. Okay. Junior's case was not — the judge has not set a trial date yet. He's refused to set a trial date so far. Well, when there's a cert petition pending, you know. Well, he decided he didn't like my jury instructions, and so he denied my motion to set a trial date. But I would like to answer Your Honor's question from earlier about how can you hold Johnson liable when he wasn't involved later. This court in Cole v. Carson and in Castellano v. Fergozzo said that when you fabricate — when an officer fabricates evidence and uses that to obtain either criminal charges or otherwise deprive a person of liberty, therefore resulting in a wrongful conviction, that you're responsible for the natural and foreseeable consequences of your actions. And the fact that Campbell testified at Megan's trial about Johnson fabricating his testimony does not mean that somehow the fabrication was vitiated. Because what he testified at trial was that the son and the daughter let Senior into the house. That was from the unrecorded first interview with Campbell. And so it's a jury question whether or not that fabrication— And that all came out before the jury, the inconsistencies. Is that correct? The inconsistencies were known to the defense attorney at the time. That is true. But it is a question, it is a jury question for a jury in this case whether or not the fabricated evidence of David Campbell had a reasonable probability of affecting the verdict. And it did, we submit, and we know that it did because the only difference between Megan's trial and Richie's trial was the testimony of David Campbell. And I can provide you the record citations to Junior's trial. You can find the witnesses who testified at Junior's trial at ROA 1647. And you can find the witnesses that testified at Megan's trial at 3560. And so Campbell testified at both Winfrey Senior's trial and at Megan's trial. But he didn't testify at Junior's. And the teachers testified at both. Pikett testified at both. Everybody else testified at both. There was a lot different evidence for Megan than there was for her brother. There was not a lot different evidence. If the jury is told, I guess somebody made a Bruton objection or something, if that was relevant. But if the jury was told that Jason King, her boyfriend, says they went to Hammond's house arguably to concoct an alibi and that she did something to herself to prevent the cops from getting evidence to begin with, I mean, you know, a discerning jury says, well, that's bad news for Megan and what she threatened to the, you know, what she was seen doing in school. But that doesn't necessarily implicate Junior. Megan complied, I mean, the stuff at trial about her shaving her pubic hair, I mean, she submitted both a scent pad, she submitted to a buccal swab. I understand that. We can argue about that. And that's the argument that seven judges have in the Texas Court of Criminal Appeals against two judges. What I'm really talking about here is what is the, if you can hold, if Deputy Johnson is potentially held liable for these events, is he held liable for the entire progress even though the case was reexamined, more evidence came in, 12 jurors found her guilty, two members of the court, you know, and so on. Does that, is that an intermediary or not? I'm asking you about that. The court has never applied, and the Supreme Court has never applied, the concept of intermediary to affirmative process. But again, when you look at the, and maybe that's the answer, but when you look at the Texas Supreme Court decision, what you find is that all this business about Campbell is in about two paragraphs. And what they're really concerned with is the testimony to the, you know, her statements in school, what she was doing to herself, whether the alibi was an alibi or just a legitimate effort to recover her memory. Campbell is a real small feature of that, and it's sort of interesting that it's now being inflated into the be all and end all of the case. It is a jury question whether or not Campbell's fabricated statement had an effect on Megan's trial, on her conviction. And this, you know, the question of causation, whether there was other evidence that was presented against Megan that had a greater effect, that's all for a jury to determine. Okay. Thank you.